UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EDWIN SANCHEZ,
    Petitioner,

v.

UNITED STATES OF AMERICA,
    Respondent.

No. 3:09cv1330 (SRU)

**RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

    Edwin Sanchez moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (doc. # 1).  In his motion, Sanchez argues that he is entitled to file a direct appeal of his sentence or, alternatively, that he is entitled to a new sentence from this court.  For the reasons set forth below, Sanchez is entitled to an appeal of his sentence.  Sanchez's motion is therefore granted to the extent he seeks to file a notice of appeal.  His remaining claims for habeas relief, however, are denied.

**I.**     **Background**

    On January 7, 2008, Sanchez appeared before (now retired) United States District Judge Alan H. Nevas and pled guilty to Count One of a superseding indictment against him and 18 co-defendants.  Count One charged Sanchez with conspiring to possess with the intent to distribute 1,000 grams or more of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846.  Superseding Indictment, Count One (3:06cr272 (AHN) (SRU), doc. # 133).  The superseding indictment also charged Sanchez with engaging in a Continuing Criminal Enterprise involved in conspiring to possess with the intent to distribute at least 30 kilograms of heroin, in violation of 21 U.S.C. § 848(a)-(b).  *Id.* Count Five. The superseding indictment described Sanchez as having regularly supplied large quantities of raw, unprocessed heroin to drug traffickers in Bridgeport, Connecticut, between 1996 and

November 2006.  *Id.* ¶¶ 1-8.

Sanchez's plea agreement set forth his statutory penalties and expected sentencing range under the United States Sentencing Guidelines.  In the plea agreement, the government represented that, based on a prior state narcotics conviction dating from 1993, it would seek to enhance Sanchez's mandatory minimum penalty pursuant to 21 U.S.C. § 851.  Plea Agreement at 2 (3:06cr272 (AHN) (SRU), doc. # 682).  With the section 851 enhancement, Sanchez faced a mandatory minimum sentence of 20 years' imprisonment.  *Id.*  The plea agreement also set forth Sanchez's sentencing range under the Sentencing Guidelines.  That guidelines calculation was premised on Sanchez having conspired to possess with the intent to distribute 30 kilograms or more of heroin, which resulted in a base offense level of 38; a two-level increase because firearms were possessed in the course of the conspiracy; a four-level increase because of Sanchez's leadership, or aggravating, role in the conspiracy; and a three-level reduction for acceptance of responsibility, resulting in an adjusted offense level of 41.[1]  Because he fell within criminal history category II, Sanchez was subject to a guidelines range of 360 months' to life imprisonment.  *Id.* at 7.

The plea agreement permitted Sanchez to argue against application of the two-level firearms enhancement, as well as for a downward departure or non-guidelines sentence.  *Id.*  The agreement, however, included a section entitled "Waiver of Right to Challenge Prior Convictions Used To Enhance Sentence."  *Id.* at 8.  That section stated that the government was under no obligation to prove Sanchez's prior sentences before a grand jury or trial jury, and that the prior conviction would be "determined either: by stipulation between the parties; in accordance with

---

[1] The plea agreement erroneously provided that Sanchez's adjusted offense level would be 40.  Plea Agreement at 7.  At sentencing, the court clarified that the parties had stipulated to an adjusted offense level of 41.  Sentencing Tr. at 4.

the procedures specified by the United States Sentencing Guidelines; or by the Court upon a finding that the relevant facts have been . . . proven by a preponderance of the evidence." *Id.* The parties reserved their rights to appeal and to oppose any appeal of Sanchez's sentence. *Id.*

Sanchez was sentenced on September 9, 2008. At the sentencing hearing, Sanchez's attorney did not contest the plea agreement's guidelines calculation, but stipulated to Sanchez's adjusted offense level and criminal history score. Moreover, Sanchez's attorney conceded the legitimacy of Sanchez's prior narcotics conviction for the purpose of the section 851 enhancement. Sanchez's attorney, however, argued for a downward departure and/or a non-guidelines sentence. In his sentencing memorandum and at the sentencing hearing, Sanchez's attorney contended that Sanchez should receive the 20-year mandatory minimum sentence because (1) a guidelines sentence was greater than necessary to punish Sanchez and deter him and others, in light of Sanchez's difficult upbringing and limited criminal record; (2) a guidelines sentence was greater than necessary given Sanchez's low probability of recidivating; and (3) a guidelines sentence would create disparity between Sanchez and Dennis Broadnax, a defendant who engaged in unrelated drug distribution crimes but who received from this court the same 20-year mandatory minimum facing Sanchez. Sanchez's counsel additionally argued that Sanchez was entitled to a downward departure or a non-guidelines sentence based on his role in breaking a so-called "log jam:" as Sanchez's attorney argued, Sanchez's decision to plead guilty led some of his co-defendants to plead guilty and forgo trial.

The government contested Sanchez's entitlement to a non-guidelines sentence or a downward departure, and recommended a sentence of 30 years. Nevertheless, the court sentenced Sanchez to a non-guidelines sentence of 288 months' imprisonment, as well as a period of 10 years' supervised release and a special assessment of $100. Judgment (3:06cr272

(AHN) (SRU), doc. # 686). In the court's statement of reasons, Judge Nevas explained that a non-guidelines sentence was appropriate based on Sanchez's log-jam role and because 288 months "reflects the seriousness of the offense, promotes respect for the law, . . . provides just punishment for this offense . . . [and] affords adequate deterrence to criminal conduct. It certainly protects the public from further crimes to be committed by this defendant." Sentencing Tr. at 64-65 (3:06cr272 (AHN) (SRU), doc. # 953). Judge Nevas, however, imposed a punishment of more than the mandatory minimum because of the seriousness of the offense and the lack of personal mitigating circumstances in Sanchez's favor. The court found that Sanchez was "intelligent" and, "if [he'd] put his mind to it, [Sanchez] probably could've done anything [he] wanted to, in terms of legitimate employment." *Id.* at 61-62. Yet, Sanchez was "lured and attracted to the big, flashy high life provided by dealing drugs." *Id.* The court then engaged in the following colloquy with Sanchez regarding his drug distribution.

> THE COURT: You're putting out heroin. Not somebody who smokes a joint once in a while, but heroin — addictive, destructive heroin.
>
> You've got three daughters. What would you — How would you feel if you were sitting here as a free person, and someone was standing where you're standing, who had sold heroin to your — one of your daughters?
>
> THE DEFENDANT: Very awful, couldn't even imagine it.
>
> THE COURT: And that daughter of yours became a heroin addict?
>
> THE DEFENDANT: I'd also look at myself as a failure if something like that would happen to one of my children because —
>
> THE COURT: Well, that's what you were doing. You were putting that drug — those drugs out onto the street, and someone else's daughter was becoming addicted because of the drugs that you sold.
>
> For what? For diamond bracelets, fancy, watches, big cars?

*Id.* at 62-63.

Judgment entered with respect to Sanchez on September 18, 2008. Neither Sanchez nor

his attorney filed a notice of appeal. On August 19, 2009, Sanchez filed a *pro se* motion to vacate, set aside, or correct his sentence. That motion was within section 2255's one-year statute of limitations. *See* 28 U.S.C. § 2255(f) (creating one-year statute of limitations from "the date on which the judgment of conviction becomes final").

## II.     Standard of Review

Section 2255(a) provides: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

"Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010). In particular, the scope of collateral review of constitutional claims is limited by two procedural rules. First, the so-called "mandate rule" bars a district court from reviewing a section 2255 claim that was "expressly decided by the appellate court [on direct review]" or "impliedly resolved by the appellate court's mandate." *Id.* The second and corollary procedural rule prohibits a district court from reviewing a section 2255 claim "that could have been brought on direct appeal . . . absent cause and prejudice." *Id.* at 54. In other words, a claim that a petitioner failed to raise on direct review is deemed to be procedurally defaulted, unless the petitioner can show that there was cause for not pursuing the claim and that he or she was prejudiced by that alleged error. *Marone v. United States*, 10 F.3d 65, 67 (2d Cir. 1993).

Finally, section 2255 provides that "[u]nless the motion and the files and records of the

case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). That hearing need not be a full testimonial hearing. Rather, in collateral challenges based on allegations of ineffective assistance of counsel, the court may restrict its hearing to written submissions by the parties. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (holding that, in deciding a section 2255 petition alleging ineffective assistance of counsel, it was "within the district court's discretion" to limit the record to documentary evidence, and thereby "choose a middle road that avoided the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing").

## III. Discussion

Sanchez's section 2255 petition presents three claims, each of which contends that he was deprived of his Sixth Amendment right to effective assistance of counsel. First, Sanchez alleges that his attorney was ineffective for failing to file a notice of appeal on his behalf; second, that his attorney was ineffective for failing to challenge the section 851 enhancement of his statutory mandatory minimum sentence; and, third, that his attorney was ineffective for failing to challenge the quantity of drugs attributed to him in his guidelines calculation, as well as his offense-level enhancements for using a firearm and for his leadership role in the conspiracy. Because Sanchez never filed a direct appeal, his ineffective assistance claims cannot be barred from review by the mandate rule. Nor are his ineffective assistance claims procedurally defaulted. Rather, ineffective assistance of counsel claims constitute an exception to the procedural default rule, and a habeas petitioner may "raise ineffective assistance of counsel claims in a Section 2255 petition even though no ineffective assistance claims were raised on

direct appeal." *Yick Man Mui*, 614 F.3d at 55 (discussing effect of *Massaro v. United States*, 538 U.S. 500 (2003)). Therefore, the court will decide the merits of Sanchez's claims.

Sanchez's first claim states that he was denied effective assistance of counsel when his attorney failed to file a notice of appeal on his behalf. According to Sanchez's petition,[2] "counsel never actually consulted with the client/petitioner about the possibilities of taking an appeal." Mot. to Vacate at 5 (doc. # 1). Moreover, Sanchez asserts that, during the plea negotiations, he told his attorney that he did not accept the government's statutory and guidelines calculations, which, in Sanchez's view, "adequately demonstrated to his lawyer, his desire to challenge enhancement factors, i.e., to have an appeal." *Id.* at 6.

In response, the government submits an affidavit from John R. Gulash, Sanchez's attorney, which states in relevant part:

> During the months immediately preceding the defendant's change of plea and the execution of the plea agreement, I had extensive discussions with the defendant regarding the likely consequences of a plea agreement and the extremely limited potential for appealing a Guidelines or below Guidelines sentence.
>
> For example, the final plea agreement letter dated January 7, 2008, contained a Guidelines calculations stipulation (page 7), [and] a Waiver of Right to Challenge Prior Convictions used to Enhance Sentence provision (page 8)[.]
>
> I specifically discussed the futility and inapplicability of appealing a sentence that exceeded twenty years. The decision by the Sentencing Judge to impose a sentence in excess of the mandatory minimum demonstrated the fact that the Sentencing Judge's sentencing decision was not influenced by the fact that the defendant did or did not face a mandatory minimum sentence of twenty years.
>
> The clear spirit of the written plea agreement was that the defendant and the Government agreed to disagree regarding the appropriate sentence within the

---

[2] On the final page of his petition, Sanchez cites 28 U.S.C. § 1746 in an effort to swear to the truth of his statements. Although Sanchez did not include the prescribed language of section 1746 before his signature, the court will accept Sanchez's statements in his motion as if they were sworn — or, at the very least, as if they were substantially the same as any sworn testimony Sanchez would give in court.

> confines of twenty years as the lowest sentence that the defense would request and thirty years as the highest sentence the Government would request.

Aff. of John R. Gulash ¶ 10(I)(a)-(d) (doc. # 8).

"A defendant claiming ineffective assistance of counsel must show (1) that counsel's representation 'fell below an objective standard of reasonableness,' . . . and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). The *Strickland* test for ineffective assistance of counsel applies to Sixth Amendment claims of ineffective appellate counsel just as it would to claims of ineffective assistance at trial. *Id.* at 477. When a petitioner alleges ineffective assistance for failure to file a notice of appeal, the Court of Appeals has instructed the district court to hold a hearing pursuant to section 2255. *Campusano v. United States*, 442 F.3d 770, 776 (2d Cir. 2006). The court has done so, although in a more limited form than a full testimonial hearing. The instant hearing has been limited to Sanchez's written motion, Gulash's affidavit, and the record from Sanchez's criminal proceeding, the sum of which is sufficient for the court to make the necessary findings of fact to decide Sanchez's petition. *Cf. Chang*, 250 F.3d at 86 ("The district court reasonably decided that the testimony of [the petitioner] and his trial counsel would add little or nothing to the written submissions.").

Sanchez has not claimed that he instructed his attorney to file a notice of appeal and that his attorney ignored his request. Rather, Sanchez asserts that his attorney failed to consult him about filing a notice of appeal, despite Sanchez's repeated demonstrations that he disagreed with his statutory mandatory minimum and his guidelines calculation. In his affidavit, Sanchez's attorney did not aver that he ever consulted his client regarding filing a notice of appeal. When a defendant's counsel fails to consult his or her client, that failure constitutes deficient performance under the first *Strickland* prong "when there is reason to think either (1) that a

rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known." *Flores-Ortega*, 528 U.S. at 480.

Sanchez's attorney was not deficient because a rational defendant would have wanted to appeal. To the contrary, Sanchez received a favorable sentence: although it was more than the mandatory minimum, it was six fewer years than the bottom of the Sentencing Guidelines range. Sanchez's attorney reasonably believed that Sanchez was, or should have been, pleased with that outcome and therefore did not wish to file an appeal.

Moreover, the arguments Sanchez would have made on appeal were likely frivolous. In his petition, Sanchez argues that his 1993 state narcotics conviction was "unconstitutionally obtained" and otherwise "ambiguous" and "unreliable." Mot. to Vacate at 15. But section 851 bars a defendant from "challeng[ing] the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). The government filed its section 851 motion against Sanchez on January 7, 2008, approximately 15 years after Sanchez's prior conviction. Second Offender Information (3:06cr272 (AHN) (SRU), doc. # 403). Thus, even assuming that Sanchez were correct regarding the invalidity of his prior conviction, section 851(e) prohibited him from contesting the conviction's validity at sentencing or on appeal. Likewise, Sanchez's quarrel with the court's guidelines calculation would not have warranted a new sentence because Sanchez received a non-guidelines sentence. Any alleged procedural error in calculating the drug quantity attributed to Sanchez or the application of the firearms and leadership enhancements against him would have been harmless because "the district court would have imposed the same

sentence," and Sanchez would not have been entitled to resentencing. *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009). Finally, the filing of an appeal would have jeopardized the favorable sentence that Sanchez received by inviting a government cross-appeal of the non-guidelines sentence.

Nevertheless, on the record before the court, Sanchez's attorney had a duty to consult with his client because Sanchez had reasonably demonstrated an interest in appealing his sentence. Sanchez claims that, throughout the plea negotiations, he expressed to counsel his disagreement with the government's statutory and guidelines calculations. Moreover, the plea agreement included no appellate waiver, but expressly provided that "[t]he parties reserve their respective rights to appeal and to oppose each other's appeal of the sentence imposed as permitted by the statute." Plea Agreement at 8. The insertion of that language indicates an intention on Sanchez's part to appeal his sentence, even if that sentence ultimately fell below the bottom of his guidelines range. *See Flores-Ortega*, 528 U.S. at 480 ("Even in cases where the defendant pleads guilty, the court must consider such factors as whether . . . the plea expressly reserved or waived some or all appeal rights."). Finally, although Sanchez's attorney may have discussed with his client the likelihood of different sentencing outcomes before sentencing, there is no submitted evidence that Gulash ever consulted Sanchez concerning an appeal following sentencing, even though the plea agreement specifically permitted Sanchez to file such an appeal. Those facts lead the court to conclude that Sanchez's attorney was deficient when he failed to consult his client after Sanchez had reasonably demonstrated that he was interested in appealing his sentence.

That leads to the second prong of the *Strickland* test: whether counsel's deficient performance prejudiced Sanchez. Sanchez's attorney "deprived [Sanchez] of a notice of appeal

and, hence, an appeal altogether." *Id.* at 483. The denial of Sanchez's right to appeal — that is, the denial of an entire judicial proceeding to which Sanchez had a right — "demands a presumption of prejudice." *Id.* In order for Sanchez to sustain his burden of proving his counsel's ineffectiveness, he need only show that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484. Sanchez has met that burden. Sanchez has demonstrated that he reserved the right to appeal; that he would have filed an appeal, even if there were only a small likelihood of success; and that, before and immediately following his sentencing, he lacked access to a legal library and was otherwise unable "to find out on his own, the procedures necessary for him to take action on his own accord for filing a notice of appeal." Mot. to Vacate at 5-6. In other words, there is a reasonable probability that Sanchez would have filed a notice of appeal had his attorney consulted him. The government may be correct that Sanchez "failed to contact a new lawyer, . . . reach out to the Court for appointment of counsel[,] . . . seek further clarification on how to file a notice of appeal, or make attempts to file a notice on his own within the allocated ten-day period." Gov't Resp. at 12 (doc. # 8). But assertions that Sanchez did not avail himself of every opportunity for assistance do not adequately disprove the reasonable probability that Sanchez would have filed a notice of appeal but for his attorney's deficient performance.

The government has not overcome the presumption of prejudice, and Sanchez has met his burden to prove his counsel's ineffectiveness for failing to file a notice of appeal on his behalf. Sanchez is therefore entitled to a reentry of judgment, which will provide him an opportunity to file a notice of appeal with the Court of Appeals within 14 days of the judgment's reentry.

Sanchez has requested that I hold his remaining habeas claims in abeyance while his appeal is pending. I decline to do so. Sanchez represented that he included all of his habeas

claims in his petition in order to ensure that each of his potential claims for relief was filed within section 2255's one-year time period. Mot. to Vacate at 12. Sanchez has not suggested that he was anticipating filing another habeas petition to supplement his current petition, and there is no risk that Sanchez has other claims that would be barred in a second or successive petition filed after this ruling is entered. *See* 28 U.S.C. § 2255(h) (limiting second or successive 2255 petitions). Based on the parties' briefing and the submitted record, Sanchez's remaining claims of ineffective assistance are capable of resolution now. Those claims are denied for essentially the same reasons articulated above concerning the likely frivolousness of Sanchez's appeal.

Sanchez's first claim of ineffective assistance is based on his attorney's failure to challenge his prior narcotics conviction on the conclusory grounds that it was "unconstitutionally obtained." Mot. to Vacate at 15. But 21 U.S.C. § 851(e) precludes a prisoner from challenging the validity of his sentence if it is more than five years old at the time the information was filed. Nearly 15 years had passed between the date of Sanchez's conviction and the government's filing of the section 851 information. Sanchez's attorney was not deficient for electing not to challenge the section 851 enhancement on the grounds that Sanchez's prior conviction was unconstitutionally obtained, and counsel's decision did not prejudice Sanchez because any such challenge was plainly barred by the statute.[3]

---

[3] Although Sanchez has not challenged the constitutionality of 21 U.S.C. § 851(e), every court of appeals to consider section 851(e)'s five-year limitations period has upheld the law. *See United States v. Henderson*, 320 F.3d 92, 104 (1st Cir. 2003) (holding section 851(e) to be constitutional, and citing six other circuits that have reached the same result). Notwithstanding section 851(e)'s limitations period, Sanchez perhaps could have challenged his prior conviction on the basis that he had been denied his Sixth Amendment right to counsel. *See United States v. Arango-Montoya*, 61 F.3d 1331, 1337 (7th Cir. 1995) (noting that section 851(e) could pose a constitutional question because "[t]he Supreme Court has held that the constitutional right to the assistance of counsel forbids the government to base an increase in punishment on a conviction

Next, although there is support for Sanchez's position in his reply brief that the 1993 state narcotics conviction may not count as a "felony drug offense" under 21 U.S.C. §§ 841(b)(1)(A) & 851 because Connecticut's definition of illegal narcotics is broader than the term is defined under federal law, *see Samas v. United States*, 3:10cv422 (JCH), 2011 WL 221866 (D. Conn. Jan. 20, 2011), counsel was not ineffective for failing to raise that argument because the court did not base its sentencing decision on the statutory mandatory minimum. In *United States v. Deandrade*, 600 F.3d 115 (2d Cir. 2010), the Court of Appeals confronted facts quite similar to Sanchez. There, the defendant was subject to a 20-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) and faced a guidelines range of 360 months' to life imprisonment; he ultimately was sentenced to a non-guidelines sentence of 300 months but appealed because the predicate offense for his statutory mandatory minimum enhancement was not a "felony drug offense." *Id.* at 120. The *Deandrade* Court held that, because the district court had not relied on the mandatory minimum in sentencing the defendant, the defendant's sentence was not infirm. *Id.*; *accord United States v. Dominguez*, 393 F. App'x 773 (2d Cir. Sept. 21, 2010) (unpublished summary order) (holding, in appeal filed by two of Sanchez's co-defendants, that "[w]here a district court makes an informed and individualized judgment . . . to sentence a defendant well above any mandatory minimum applicable to his case, . . . any error in the identification of the applicable mandatory minimum was harmless" (quotation omitted)). In this case, Judge Nevas did not rely on or even reference Sanchez's mandatory minimum when sentencing him. Instead,

---

in a proceeding in which the defendant was denied the assistance of counsel" (quotation omitted)); *cf. Custis v. United States*, 511 U.S. 485, 496 (1994) (holding that defendant may contest a prior conviction under the Armed Career Criminal Act only if the challenge is based on the deprivation of his Sixth Amendment right to counsel). Sanchez, however, has not alleged that he was denied counsel at the time of his 1993 conviction, and section 851(e) would have precluded any other challenge to his 1993 conviction.

Judge Nevas based his decision on Sanchez's history and character, Sanchez's role is helping break a "log jam," the severity of the offense, and the factors set forth in 18 U.S.C. § 3553(a). Because any mistake in Sanchez's mandatory minimum was ultimately harmless, any deficiency in counsel's decision not to challenge the section 851 information did not prejudice Sanchez. Sanchez's ineffective assistance claim fails on that ground.[4]

     Nor was counsel deficient by stipulating to the government's guidelines calculation and thereby not challenging the guidelines calculation that the court adopted at sentencing. Counsel made a strategic choice to argue for a non-guidelines sentence rather than contest the government's proposed calculation, which would have likely prompted the government to introduce evidence not admitted at sentencing regarding the scope of the drug conspiracy and Sanchez's involvement in it. That additional evidence would have been prejudicial to Sanchez and could have adversely affected him at sentencing. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). Here, Sanchez cannot overcome that presumption of counsel's adequate assistance for one simple reason: his attorney's strategy worked. Sanchez

---

[4] The amended sentence that Edgar Nieves, Sanchez's co-defendant, received is distinguishable. Nieves was originally sentenced to 240 months' imprisonment, the statutory mandatory minimum. Judgment as to Edgar Nieves (3:06cr272 (AHN) (SRU), doc. # 866). Nieves was resentenced, with the government's consent, because his prior conviction likely did not count as a "felony drug offense" under 21 U.S.C. §§ 841(b)(1)(A) & 851. *See* Sentencing Mem. by USA as to Edgar Nieves at 1 (3:06cr272 (AHN) (SRU), doc. # 1053) (confirming that Nieves was subject to a ten-year mandatory minimum sentence at resentencing); Am. Judgment as to Edgar Nieves (3:06cr272 (AHN) (SRU), doc. # 1055) (sentencing Nieves to 192 months' imprisonment with credit for time served). Unlike Sanchez, Nieves was initially sentenced based on the enhanced statutory mandatory minimum, which explains why the government did not oppose his appeal for a new sentence.

received a non-guidelines sentence 72 months short of the bottom of his guidelines range. Counsel's decision not to challenge Sanchez's guidelines calculation was therefore neither deficient nor prejudicial. Sanchez's ineffective assistance claim is denied on that ground.

## IV. Conclusion

For the reasons set forth above, Sanchez's motion to vacate, set aside, or correct his sentence (doc. # 1) is GRANTED to the extent that he seeks the right to appeal his sentence. In granting that part of Sanchez's section 2255 petition, the court notes that Sanchez's counsel performed ably in representing Sanchez during his plea negotiation and at sentencing. But because the record demonstrates a reasonable probability that Sanchez would have filed an appeal had his attorney consulted him beforehand, Sanchez is entitled to reentry of the judgment, which will allow him now to file a notice of appeal within 14 days of the judgment's reentry.

Sanchez's remaining claims for relief are DENIED.

In granting the writ to this limited extent, the court wishes to underscore the strong probability that Sanchez's direct appeal will be fruitless — or even result in a cross-appeal and a longer sentence. Sanchez's victory in obtaining the right to file a notice of appeal does not suggest there is any merit to his underlying claims. As the Court of Appeals has explained in an analogous case, "we do not cut corners when Sixth Amendment rights are at stake," *Campusano*, 442 F.3d at 777, and the court cannot deny Sanchez relief based on its impressions that an appeal by Sanchez would be futile or even foolish.

In order to ensure that Sanchez has enough time to receive this ruling and then to decide whether to file a notice of appeal, the clerk is instructed to reenter judgment with respect to Edwin Sanchez in criminal docket number 3:06cr272 (AHN) (SRU) on June 2, 2011. Sanchez must file any notice of appeal within 14 days of June 2, 2011 — i.e., by June 16, 2011 — or it will be time-barred.

It is so ordered.

Dated at Bridgeport, Connecticut, this 18th day of May 2011.

                                                          /s/ Stefan R. Underhill
                                                          Stefan R. Underhill
                                                          United States District Judge